UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERRANCE HEAD,

               Petitioner,

   v.

AUBURN CORRECTONAL FACILITY,

          Respondent.

**DECISION AND ORDER**

6:24-CV-06497 EAW

---

## I.    <u>INTRODUCTION</u>

*Pro se* petitioner Terrance Head ("Petitioner") filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). Petitioner challenges the constitutionality of the judgment entered against him on May 17, 2021, in New York State, Chemung County Court (Rich, J.), following his guilty plea to one count of first-degree assault (New York Penal Law ("P.L.") § 125.20(1)). (*Id.* at 1).[1] Petitioner received a negotiated sentence of 10 years' imprisonment plus 5 years' post-release supervision. He is currently serving that sentence. (*Id.*).[2] Petitioner also has filed a motion for a stay-and-abeyance (Dkt. 32, 40) and several documents which the Court has construed as amendments to the petition (Dkt. 8, 10, 12,

---

[1]     Page citations to Petitioner's pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page. Page citations to Respondent's pleadings are to the original pagination.

[2]     *See* https://nysdoccslookup.doccs.ny.gov/ (results for DIN 21B0762 (last accessed Aug. 29, 2025)).

13, 14, 16).  For the reasons below, the motion for a stay-and-abeyance is denied with prejudice.  The petition (Dkt. 1), as amended by the supplemental pleadings (Dkt. 8, 10, 12, 13, 14, and 16), is dismissed.

## II.    BACKGROUND

### A.    Indictment and Arrest

On August 6, 2020, a Chemung County grand jury returned Indictment Number 2020-80, charging Petitioner with second-degree attempted murder (New York Penal Law ("P.L.") § 110.00 and § 125.25(1)); first-degree robbery (P.L. § 160.15(1)); and first-degree assault (P.L. § 120.10(1)).  (SR: 207-08).[3]  The charges stemmed from an incident on May 30, 2020, in which Petitioner allegedly stabbed his acquaintance, Corey Ludwig ("Ludwig" or "the victim"), with a knife and stole his cell phone on May 30, 2020, in the City of Elmira, New York.  An arrest warrant was issued, and Petitioner was taken into custody on August 14, 2020.  (SR: 216-17).

### B.    Arraignment and Assignment of Counsel

During the arraignment on August 17, 2020, Chemung County Court Judge Richard W. Rich, Jr. ("trial court") appointed Todd Miller, Esq. ("defense counsel" or "Miller") to

---

[3]      Citations to "SR:" refer to the Bates-stamped page numbers of the state court records filed by Respondent at Docket 30-2.

represent Petitioner.[4]  (08/17/20 T: 4-5).[5]  When Petitioner asked for a different attorney, the trial court noted that the Chemung County Public Defender's office as well as the County's public advocate were conflicted out of the case.  (08/17/20 T: 8-9).  The trial court assured Petitioner that "Miller is very experienced and is a very good lawyer."  (*Id.*).  Miller told Petitioner that he would meet with him in a couple of days to provide him with discovery and discuss his request for a new lawyer.  (Id. at 8.)  The trial court told Petitioner that if, after talking to Miller, Petitioner still was not satisfied, the trial court would address his request for a different attorney at a future appearance.  (*Id.*).  However, Petitioner did not complain about Miller's representation during any subsequent court appearances.

### C.    Plea Negotiations and Competency Hearing

On October 26, 2020, Miller stated that Petitioner had rejected the prosecution's then-pending offer to plead guilty to the first-degree assault count in exchange for a sentence of 15 years' imprisonment and 5 years' post-release supervision. (10/26/20 T: 2).

On November 23, 2020, Miller reiterated that Petitioner would not accept the 15-year plea offer and had requested a trial date.  (11/23/20 T: 2).  The trial court explained to Petitioner he could receive a 25-year prison term for first-degree assault if he were convicted after trial.  (11/23/20 T: 2-3).  Petitioner said he understood.  (*Id.*).

---

[4]    Petitioner appeared virtually during his arraignment and all subsequent proceedings due to the COVID-19 pandemic.  (Dkt. 29 at 2 n.2).

[5]    Citations to "month/day/year T:" refer to the original page numbers of the state court transcripts, referenced by the transcript's date.  The state court transcripts were filed by Respondent at Docket 30-3.

On January 11, 2021, Miller said that the prosecutor had extended a new plea offer and requested additional time to discuss it with Petitioner.  (01/11/21 T: 2).

When the parties appeared on February 1, 2021, Miller stated that Petitioner had asked him to request a mental competency examination pursuant to New York Criminal Procedure Law ("C.P.L.") Article 730.  Petitioner told the trial court that he had been hallucinating and having nightmares that he was being attacked.  (02/1/21 T: 3).  The trial court ordered the exam.  (*Id.*).

On March 29, 2021, the trial court stated that the two psychiatrists who had examined Petitioner pursuant to C.P.L. Article 730 had found him competent to proceed.  (03/29/21 T: 2).  Neither Miller nor Petitioner objected.  Miller requested an adjournment to discuss the plea offer mentioned at the January appearance, as well as "his chances at trial and his exposure."  (03/29/21 T: 2-3).

**D**.    **Trial Court Declines to Accept Guilty Plea on April 5, 2021**

On April 5, 2021, Miller informed the trial court that he believed Petitioner was going to reject the latest offer of a 10-year sentence in exchange for his guilty plea to first-degree assault.  (04/05/21 T: 2; *see also* 04/05/21: 5 (prosecutor clarifying that the subject charge was first-degree assault, not attempted first-degree assault)).

The trial court engaged Petitioner in the following colloquy:

| | |
|---|---|
| THE COURT: | The plea offer in this case would reduce that class B violent to a C violent and cap your time -- or set your time at 10 years, which is significantly less than half what you would probably get if you are convicted as charged.  Do you understand that? |
| [PETITIONER]: | Yes. |

| | |
|---|---|
| THE COURT: | And you understand that if you reject this offer today, it's not coming back.  And this Court will not, will not accept a lighter offer than that.  The law won't even allow it.  But I'm not engaging in any further plea negotiations that doesn't call for a plea to the top count moving forward.  Do you understand that? |
| [PETITIONER]: | Yes. |
| THE COURT: | So if you think that you are negotiating a better sentence, you may beat this at trial, and I hope you do. I don't want anybody to go away.  But I'm not engaging in further plea negotiations.  So if you decline this offer today, don't come back and try to plead to something else.  Because it ain't going to happen.  And you are not going to walk out of here with less than 10 years, unless obviously you go to trial and there is a trial verdict [of not guilty].  Then obviously, you could walk out with nothing.  But don't think that this is a bargaining tool. |
| [PETITIONER]: | So there is no way I can get less -- no more less than 10? |
| THE COURT: | There is absolutely, positively no way that this Court will sentence you to less than 10 years other if there is a verdict at trial.  At which you could get up to 25.  And if you are convicted of attempted murder, your sentence would be damn close to that. |
| . . . | |
| THE COURT: | I can't make that any clearer.  And I am not engaging in further bargaining beyond right now.  So you are not going to be able to come in next week and get 10 years or anything less than that.  That, I promise you. |

(04/05/21 T: 3-5).  Miller spoke directly to Petitioner, saying:

So, Terrance, I want you to think about that.  I've talked to your family.  You know, I've talked to everybody.  I've bothered the District Attorney down to 10 where he doesn't want to be.  And I've explained everything to you, Terrance.

(04/05/21 T: 5).  Petitioner then said, "I'll take the 10," to which the trial court responded,

"All right.  That's probably a smart move.  Again, unless you are innocent of this, then

obviously I wouldn't plea to anything."  (*Id.*).

The trial court commenced the plea colloquy, which proceeded without incident (04/05/21: 6-9) until the trial court asked if Petitioner intended to seriously injure Ludwig when he stabbed him with a knife (04/05/21 T: 9). Petitioner responded, "No. He hit me first. I was just defending myself." (04/05/21 T: 9-10). The trial court asked if Ludwig was armed with a weapon, to which Petitioner responded, "That, I do not know." (04/05/21 T: 10).

The trial court then explained to Petitioner the defense of justification:

> Well, you have a right - - what we call a right of justification or a self-defense right. If he's attacking you, you can use similar force to defend yourself. Now, if he attacked you with a fist and you responded by stabbing him, that would be what's called imperfect self-defense, you can't do that. But if he had a weapon, you have a right to defend yourself. And the People bear the burden of proving that you were not defending yourself. Do you understand that?

(*Id.*). Petitioner said he understood. (*Id.*). Miller stated:

> That's what we discussed, Terrance. Do you remember? We discussed the whole justification. That's what we've talked about several times. And that's why I've explained to you about if he had a knife, you had a knife, this could be a justification.

(*Id.*).

At that point, the trial court expressed concern that Petitioner was saying he did not remember the incident. (04/05/21 T: 10-11). When asked why he did not recall what happened, Petitioner responded, "We was all drinking."[6] (04/05/21 T: 11). Miller noted

---

[6]    Petitioner has not provided any information about how much alcohol he had consumed prior to the stabbing. Even assuming that Petitioner was intoxicated to some degree, "intoxication is not a complete affirmative defense to a criminal charge" under New York State law; it instead "reduces the gravity of the offense by negating the specific intent element of the crime charged." *Garfield v. Poole,* 421 F. Supp. 2d 608, 612-13

that he had "discussed this defense with [Petitioner], too." (*Id.*). The trial court told Petitioner, "If you were so intoxicated that you didn't understand the nature and consequences of your actions or whether what you were doing is wrong, that's a defense that you could raise at trial." (*Id.*). When asked if he understood, Petitioner replied, "Okay." (*Id.*). This prompted the trial court to ask Petitioner if he and Miller had discussed an intoxication defense. (*Id.*). Petitioner replied, "No." (*Id.*). Miller insisted they had "talked about that several times." (*Id.*).

The trial court told Petitioner it could not accept his guilty plea "under these circumstances" because he was "not admitting [he] intended to cause serious injury" and was "claiming that [he] d[id]n't have a recollection of what happened." (04/05/21 T: 11-12). Noting the discrepancy between Petitioner's and Miller's statements about whether they had discussed the defenses of justification and intoxication, the trial court said it did not want "to put words in anybody's mouth." (04/05/21 T: 12). Petitioner then said, "Yeah, I'm not - - I believe he did have a weapon that night he attacked me." (*Id.*). The trial court stated it was "not going to accept a plea offer" and set a trial date of May 17, 2021. (*Id.*).

Petitioner then asked "if [he] can admit to it" (*id.*), which led the trial court to ask if Petitioner was saying that he "intended to cause physical injury?" (04/05/21 T: 13). Petitioner responded, "I did not intend to cause physical injury." (*Id.*). The trial court said it could not accept the plea and would see Petitioner at jury selection. (*Id.*).

---

(W.D.N.Y. 2006) (citing *People v. Harris*, 98 N.Y.2d 452, 474 (2002) (citing P.L. § 15.25). "Although it is true that a defendant may offer evidence of his intoxication whenever it is relevant to negate an element of the crime charged, . . . even an intoxicated person may be capable of forming the requisite intent." *Id.* at 613.

### E.    Trial Court Accepts Guilty Plea on April 8, 2021

At the next appearance on April 8, 2021, Miller explained:

[Petitioner] had questions about these defenses, he wanted more detail.  He got a little confused during the plea colloquy before.  I have had several conversations with him.  I have gone through these defenses in detail and how they apply to the facts of his case and I believe he is ready to move forward today.  I believe I have answered all his questions.  He understands what those defenses are, how they relate to the facts of this case and his, his -- what would happen if he went to trial.

(04/08/21: 3).  Petitioner confirmed that what Miller said was true.  (*Id.*).

The trial court then conducted a detailed plea colloquy with Petitioner, emphasizing the importance of the decision "to plead guilty to a felony-level charge with a fairly significant prison sentence."  (04/08/21 T: 4).  The trial court stated that because pleading guilty entails the waiver of several constitutional rights, it was necessary to ensure that Petitioner was giving up these rights knowingly, voluntarily, and intelligently.  (04/08/21 T: 4-5).  The trial court explained it was required to ask Petitioner about the facts of the offense to confirm that his conduct met the elements of the charge and to ensure that "the appellate court knows that [Petitioner] knew what [he] [was] doing when [he] plead [sic] guilty."  (04/08/21 T: 5).  Petitioner said that he understood.  (04/08/21 T: 6).

The trial court instructed Petitioner to "just say, hold on, Judge, I want to talk to my lawyer," if he did not understand something, and the trial court would "absolutely give [him] that opportunity."  (*Id.*).

The trial court carefully discussed each of the trial rights Petitioner would be giving up by pleading guilty.  (04/08/21 T: 6-9).  Petitioner confirmed that he understood.  (*Id.*).

The trial court next asked Petitioner if anything had been promised to him—other than what was detailed in the plea offer itself—to convince him to plead guilty. (04/08/21 T: 9). Petitioner said, "No." (*Id.*). Petitioner confirmed that he had had enough time to discuss the guilty plea with Miller. (*Id.*). Petitioner agreed that he was pleading guilty because he thought it was his "best course of action[.]" (*Id.*).

Before the factual allocution, the trial court reminded Petitioner that he had "a right against self-incrimination" and that "nobody can force [him] to give evidence against [him]self." (04/08/21 T: 10). Petitioner confirmed that he understood. (*Id.*). The trial court explained that by pleading guilty, he was giving up the right to be free from self-incrimination because he was "going to have to tell [the trial court] what [he] did." (*Id.*). Petitioner said he understood. (*Id.*).

The trial court told Petitioner that the elements of first-degree assault, the crime to which he was pleading guilty, were intentionally causing serious physical injury to another person by means of a dangerous instrument; Petitioner confirmed he understood. (04/08/21 T: 10-11). Petitioner also said he understood that his sentencing exposure was "up to 25 years." (04/08/21 T: 11). The trial court "promis[ed] . . . [it] will stick by the plea bargain and only give [him] ten, that is the minimum, with five years of post-release supervision." (*Id.*). Petitioner said he understood. (*Id.*). The trial court also noted that the sentencing promise "assume[d]" that Petitioner was a second felony offender; in other words, Petitioner had been convicted of a felony within the last 10 years. (*Id.*). Petitioner confirmed his understanding that he was a second felony offender based on a March 12,

2014 conviction for third-degree rape. (*Id.*). The trial court found Petitioner's "application to plead guilty to be knowing, intelligent[,] and voluntary." (*Id.*).

The trial court proceeded to conduct the factual allocution, asking Petitioner what he did on May 30, 2020, that was causing him to plead guilty to first-degree assault. (04/08/21 T: 12). Petitioner said:

> We were cleaning, cleaning up a room at my uncle's new house and he [i.e., Ludwig] threw a hat at me. I threw it back. We started fighting in the house. And then my uncle told us to take it outside. We took it outside, fighting there, and I stabbed him a few times with a knife.

(*Id.*). In response to the trial court's question as to whether Petitioner intended to cause serious physical injury when he stabbed the victim, Petitioner replied, "Yes." (*Id.*).

The trial court confirmed that Petitioner understood he was giving up his right to raise justification as a defense and to have the prosecution prove that he was not acting in self-defense. (04/08/21 T: 12-13). The trial court also confirmed that Petitioner had discussed the defense of intoxication with Miller and that he understood he was giving up his right to raise that defense by pleading guilty. (04/08/21 T: 13-14).

The trial court again asked if anyone had threatened Petitioner to plead guilty or promised him anything other than what was contained in the express terms of the parties' agreement. (04/08/21 T: 14). Petitioner replied, "No." (*Id.*).

Petitioner then entered a plea of "[g]uilty" to first-degree assault, and the trial court accepted the plea. (*Id.*). Petitioner admitted the allegations in the predicate felony statement listing the 2014 third-degree rape conviction. (04/08/21 T: 15). He also confirmed he was not claiming his constitutional rights had been violated in connection

with the 2014 conviction. (*Id.*). The trial court deemed the predicate felony conviction admitted and found Petitioner to be a second felony offender. (*Id.*). The matter was adjourned pending preparation of the presentence investigation report. (04/08/21 T: 16).

### F. Sentencing

On May 17, 2021, the parties appeared for sentencing. When the trial court asked if the prosecutor and defense counsel had any comments, both attorneys requested that the trial court impose the bargained-for sentence. (05/17/21 T: 2). Petitioner declined to make a statement on his behalf. (05/17/21 T: 3). The trial court at first stated it was imposing a 15-year sentence but was immediately corrected by Miller. (*Id.*). The prosecutor confirmed that the final offer that was accepted "was ten [years in prison] plus five [years of post-release supervision]." (05/17/21 T: 4). The trial court apologized and sentenced Petitioner "in accordance with the plea bargain" to a determinate term of 10 years' imprisonment to be followed by 5 years' post-release supervision. (*Id.*). Miller stated he would file a notice of appeal on Petitioner's behalf. (*Id.*).

### G. Direct Appeal

Represented by new counsel, Petitioner pursued a direct appeal. Appellate counsel filed a brief arguing that: (1) the plea was not knowing, voluntary, and intelligent (SR: 12-28); (2) defense counsel provided ineffective assistance (SR: 28-39); (3) the sentence was excessive; and (4) the sentence was imposed in violation of Petitioner's right under New York State law to be present physically as opposed to virtually (SR: 40-47).

In support of the claim that his plea was involuntary, Petitioner contended that he had a "limited education, serious mental health issues and a history of substance abuse, all

of which arguably rendered him incapable of fully understanding or appreciating the nature and consequences of his plea," yet the trial court never inquired whether these issues affected Petitioner's ability to understand the proceedings.  (SR: 21-22).  Petitioner also contended that the trial court and defense counsel coerced him into pleading guilty by "threatening" him with longer sentences.  In particular, Petitioner noted that he was told on November 23, 2020, that the then-pending plea offer with a 15-year prison term was the best he would ever get.  He also was told on April 5, 2021, that most defendants facing the same charges are sentenced to 25 years in prison, and that if he did not accept the pending plea offer with a 10-year sentence, it would expire that day.  (SR: 22-27).

In support of his ineffectiveness claim, Petitioner asserted that defense counsel: (1) failed to advise him adequately about the defenses of justification and intoxication and "potential mitigating circumstances" that would warrant a better plea offer (SR: 33); (2) was aware that Petitioner's mental health and substance abuse issues impacted the validity of his plea and, in any event, should have raised these issues as mitigating factors at sentencing (*id.*); and (3) failed to "pursue" unspecified "effective defense strategies" (SR: 35).  Petitioner further argued that the trial court's failure to conduct an inquiry into Petitioner's request for new counsel at his arraignment warranted vacatur of the plea.  (SR: 34).

The judgment of conviction was unanimously affirmed on direct appeal by the Appellate Division, Third Department, of New York State Supreme Court ("Appellate Division").  *People v. Head*, 225 A.D.3d 1004 (3d Dep't 2024).  The Appellate Division determined that the challenge to the voluntariness of Petitioner's guilty plea was

unpreserved for review because he did not file an appropriate post-allocution motion.  *Id.*
at 1005.  Although the preservation requirement may be excused when errors in the plea
allocution are apparent from the record, the Appellate Division found no such errors in
Petitioner's case.  *Id.*  Specifically, the Appellate Division observed that while Petitioner
made statements during his previous plea colloquy on April 5, 2021, "that negated an
element of the crime or raised potential defenses," he assured the trial court at his next
appearance on April 8, 2021, "that he had conferred with counsel, understood the potential
defenses and wished to accept the plea offer."  *Id.*  The trial court then conducted a "detailed
plea colloquy wherein it discussed the rights and potential defenses that [Petitioner] was
forfeiting, which [he] affirmed he understood."  *Id.*  Finding that the record reflected that
the plea "was entered without [Petitioner] making any statements suggestive of innocence
or involuntariness," the Appellate Division held that the "narrow" exception to the
preservation requirement was not implicated.  *Id.*

The Appellate Division held that "to the extent that [the ineffectiveness claim]
impacts the voluntariness of the plea," it was unpreserved because Petitioner had not raised
it in a post-allocution motion.  *Id.*

The Appellate Division also rejected as unpreserved Petitioner's claim that he was
denied his right to be physically present at sentencing.  *Id.*  Finally, the Appellate Division
held that the sentence was neither harsh nor excessive.  *Id.*

Appellate counsel, on Petitioner's behalf, sought leave to appeal as to the following
claims: the guilty plea was not voluntary, knowing, and intelligent; defense counsel was
ineffective; and the sentence was harsh and excessive.  (SR: 260-62).  On June 28, 2024,

the New York Court of Appeals denied the application for leave to appeal. *People v. Head*, 41 N.Y.3d 1018 (2024).

### H.    Motion to Vacate the Judgment and Set Aside the Sentence

On May 7, 2024, Petitioner filed a *pro se* motion seeking to vacate the judgment pursuant to C.P.L. § 440.10 and set aside the sentence pursuant to C.P.L. § 440.20 (SR: 266-71) (hereinafter, "440.10/440.20 motion").[7] Petitioner contended that: (1) his sentence was illegal because it exceeded the statutory minimum of 8 years and was excessively harsh; and (2) defense counsel was ineffective for failing to: file a motion to reduce Petitioner's bail, request that a new attorney be appointed, request a "felony hearing," argue that the knife the police recovered near the crime scene did not have blood or DNA on it, file a post-allocution motion to withdraw the guilty plea; and inform the trial court that Petitioner: did not have a violent felony in his criminal history, had apologized to the victim and accepted responsibility for his actions, had a history of drug and alcohol abuse, "was not the aggressor," did not rob the victim of his cell phone, and had a "diminished capacity" due to intoxication and mental health issues at the time of the crime.

The prosecution opposed the motion in papers dated August 2, 2024. (SR: 272-92). Petitioner subsequently submitted a reply as well as attachments raising additional allegations of ineffectiveness. (Dkt. 38-1 at 36-63). The trial court denied the motions on April 7, 2025. (*Id.* at 65-73). The trial court found that "the issues raised by [Petitioner] in the instant motion outside of his ineffective assistance of counsel claim must be

---

[7]    A complete copy of the 440.10/440.20 motion papers is contained in Docket 38-1.

dismissed based upon [C.P.L. § 440.10(2)(c)]," because there was "nothing contained in the record or [Petitioner]'s motion papers to show that the non-ineffective assistance based grounds . . . were not appealable." (*Id.* at 67-68). The trial court noted that the Appellate Division had already rejected the harsh-and-excessive sentence claim. (*Id.*). The claim that Petitioner's sentence was illegal because it exceeded the statutory minimum warranted dismissal "without further discussion." (*Id.*).

The trial court discussed and rejected the ineffective assistance claims on the merits. At the outset, the trial court observed that the plea bargain secured for Petitioner "provided for the dismissal of the first two counts of the [i]ndictment and far less than the maximum [sentence] on the count to which [Petitioner] plead [sic] guilty." (*Id.* at 69). Though it was "unclear" what Petitioner meant by a "felony hearing," the trial court found that the claim failed in any event because Petitioner did not show prejudice as a result of defense counsel's failure to ensure that Petitioner received a "felony hearing." (*Id.*). The trial court found that Petitioner's claim that defense counsel ignored his request for a new attorney "lack[ed] merit." (*Id.* at 70). The trial court noted that Petitioner "never renewed that request, either through counsel or himself (as he had at arraignment)" and, in any event, did not "demonstrate good cause for the requested substitution." (*Id.*).

The trial court effectively found that Petitioner did not show prejudice based on defense counsel's failure to assert that Petitioner was a first-time violent felony offender since the trial court "would be aware of such status, including by way of the presentence investigation reviewed prior to sentencing." (*Id.*). As for Petitioner's attack on defense counsel's failure to advise the trial court that Petitioner apologized to the victim, wrote an

apology letter, and showed remorse, the trial court found that his allegations did not "r[i]se to a level depriving [Petitioner] of meaningful representation." (*Id.*).  Moreover, Petitioner's "claims of remorse [were] contradicted" by the entire record, including the presentence investigation report and Petitioner's failure to make any statement at sentencing, as well as his motion papers labeling Ludwig as the aggressor. (*Id.* at 70-71).

With regard to defense counsel's failure to address Petitioner's mental health and substance abuse, the trial court found that the claim "lack[ed] merit." (*Id.* at 71).  The trial court effectively determined that Petitioner did not show prejudice because Petitioner affirmed that defense counsel had explained his possible defenses and that he nevertheless wished to waive them; and that Petitioner was found competent to participate in his own defense after a C.P.L. Article 730 examination. (*Id.*).  The trial court rejected Petitioner's claim that defense counsel failed to assert he was not the aggressor because, as noted above, Petitioner affirmed he wanted to waive his right to pursue a justification defense. (*Id.*).

As for defense counsel's failure to file a bail application, the trial court found that the claim was moot since Petitioner had been convicted and sentenced. (*Id.*).  The trial court determined that defense counsel acted reasonably in light of the trial court's explanation for the bail amount previously set. (*Id.* at 72).

With regard to defense counsel's failure to mention the absence of DNA on the knife, the trial court noted that this was "a point that could have been argued at trial, if [Petitioner] elected to so proceed," but Petitioner pleaded guilty instead. (*Id.*).  As for defense counsel's failure to assert that Petitioner did not take the victim's phone during the incident, the trial court effectively found that the claim was moot, since the robbery count

was dismissed following the guilty plea. (*Id.*). With regard to defense counsel's failure to file a post-allocution motion, the trial court determined that such a motion would have had "little or no chance of success." (*Id.* (quotation omitted)). As for the additional contentions raised by Petitioner in his reply papers and subsequent filings, made without the trial court's permission, the trial court stated, without elaboration, that they did not alter its conclusion that the motion must be denied. (*Id.* at 73).

To date, Petitioner has not applied to the Appellate Division for a certificate granting leave to appeal.

## I.    Federal Habeas Proceeding

The petition is signed and dated May 7, 2024. (Dkt. 1 at 15). It consists of the following: (1) a form Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person In State Custody (*id.* at 1-15); (2) several pages of sequentially numbered paragraphs setting forth factual allegations, legal arguments, or both, under the heading "(counsel never brought this up) to court or DA" (*id.* at 16-24); (3) a letter dated November 8, 2023, that Petitioner purportedly sent to the Appellate Division while his direct appeal was pending, and in which he raised numerous additional claims regarding the validity of his plea and the ineffective assistance of counsel (*id.* at 25-29);[8] (4) a copy of the table of

---

[8]     Respondent states that "[n]othing in the record establishes that the Appellate Division received this letter or that it was accepted for filing as a *pro se* supplemental brief." (Dkt. 29 at 9 n.4). Respondent explains that New York State's rules of appellate practice "require, among other things, that *pro se* supplemental briefs be filed within 45 days of the date appellate counsel mails a copy of the counseled brief to the appellant. (*Id.* (citing N.Y. Comp. Code Rules & Reg. tit. 22, §§ 1250.9(i), 1250.11(g)(2)). Here, appellate counsel's opening brief was dated July 21, 2023 (SR: 49), which suggests that

authorities from Petitioner's brief on direct appeal (*id.* at 30-35); (5) a copy of a letter to New York Court of Appeals Judge Halligan dated July 8, 2024 (*id.* at 36-37); (6) two pages setting forth general principles of law regarding ineffective assistance claims (*id.* at 38-39); (7) a printout titled, "Inmate Disciplinary History," that is otherwise blank (*id.* at 40); (8) a copy of a letter from DOCCS dated May 17, 2024, acknowledging receipt of Petitioner's apology letter to the victim of his crime (*id.* at 41); and, (9) a copy of Petitioner's Inmate Program Assignments (*id.* at 42-43).[9]

In the form petition, Petitioner asserts that: he was denied his right to present a "mental health defense" based on his 2018 diagnoses of anxiety, depression, post-traumatic stress disorder ("PTSD"), schizophrenia, and legal blindness in his left eye (*id.* at 5) (Ground One); the plea was not voluntarily, knowingly, and intelligently entered because the trial court threatened him with a lengthy prison sentence if he went to trial, Petitioner made statements that "cast doubt upon [his] guilt" and "negated an element of the charged crime", and the trial court "did not resolve[] all doubts or indicate [his] plea was voluntarily . . . entered in light of [his] mental health & substance abuse conditions" (*id.* at 7) (Ground Two); defense counsel was ineffective because he did not raise "any of [Petitioner's] mental health issues" or "substance abuse history," "did not attempt to better the plea bargain proposed by the prosecution," "never advised [him]" of his "right to a hearing

---

Petitioner's letter "was well outside of that [45-day] window and thus not accepted by the court."  (*Id.*).

[9]    The documents attached to Docket 1 at pages 16 to 43 appear to be copies of attachments to the 440.10/440.20 motion.

during crucial stage of sentencing," "never made or mentioned" a "post allocution [motion to withdraw]" (*id.* at 8) (Ground Three); and the sentence was harsh and excessive because Petitioner sent an apology letter to the victim, this was Petitioner's first violent felony, the victim was the aggressor, Petitioner has "serious mental health issues" and "struggles with substance abuse," Petitioner has maintained employment while incarcerated, Petitioner has had no disciplinary violations since June 2021, Petitioner has the support of friends and family, Petitioner apologized to the victim in person and by phone, the victim and Petitioner were friends for two years prior to the incident, and Petitioner has completed a 12-week aggression treatment program (*id.* at 10) (Ground Four).

In the handwritten attachment to the petition (Dkt. 1 at 16-24), Petitioner lists a host of arguments that defense counsel "never brought . . . up." (*Id.* at 16). The Court interprets this document as a continuation of Ground Three. Thus, Petitioner claims that defense counsel was ineffective for failing to: argue that no blood, DNA, or fingerprints were found on the knife (*id.*); argue that Petitioner's uncle's and the victim's grand jury testimony were inconsistent about, *inter alia*, where the knife was found (*id.* at 16, 18, 20); argue that DNA testing was not performed on the knife until two months after the incident (*id.* at 16); preserve Petitioner's right to a felony hearing (*id.*); assert that the victim was Petitioner's friend, and Petitioner apologized to the victim (*id.* at 17, 20); argue that the victim's statements about how the stabbing occurred were inconsistent (*id.* at 17); assert that Petitioner's name is not mentioned in the video (*id.*); argue that the Facebook Messenger messages were inadmissible (*id.*); assert that Petitioner did not take the victim's phone; the victim allowed him to borrow it to make a phone call (*id.* at 17, 22); assert that Petitioner

was entitled to the defenses of justification and intoxication because he did not remember the stabbing and the victim was his friend (*id.* at 19, 22); assert that Petitioner accepted responsibility for his actions (*id.* at 19); ensure Petitioner's right to be present physically at sentencing pursuant to C.P.L. § 380.40(1) (*id.* at 20); argue that the absence of DNA evidence on the knife proved Petitioner's actual innocence (*id.*); request suppression hearings with regard to the knife and Facebook Messenger messages (*id.* at 20-21); argue that the trial court's statements concerning Petitioner's sentencing exposure and setting a trial date were coercive and nullified his plea (*id.* at 21, 22, 23); inform Petitioner about the need to make post-allocution motions to withdraw the guilty plea in order to preserve issues for appeal (*id.* at 21, 23); make post-allocution motions to withdraw the guilty plea (*id.* at 21); argue that, contrary to the trial court's assertion, Petitioner could be sentenced to less than 10 years in prison for first-degree assault, since the statutory minimum was eight years (*id.* at 23); object when the prosecutor omitted certain transcripts from the appendix on appeal (*id.* at 24); move to dismiss the robbery count based on insufficient evidence since the victim did not mention Petitioner taking the phone during his grand jury testimony (*id.*); and move to have the first-degree assault charge reduced to second-degree assault because Petitioner was friends with the victim, did not intend to cause serious physical injury, and apologized to the victim in person (*id.*).

After Respondent was ordered to answer the petition but before Respondent filed the answer, Petitioner filed several documents (Dkt. 8, 10, 12, 13, 14, and 16) that appear to be copies of documents filed in connection with his 440.10/440.20 motion.  Dockets 8, 10, 12, 13, 14, and 16 all begin with some version of a request to add the within allegations

to his "case file."    Docket 8 asserts that: Petitioner and defense counsel had an "irreconcilable conflict" because they "didn't agree about anything," and  defense counsel and the trial court ignored Petitioner's request for new counsel (*id.* at 1, ¶ 3); defense counsel did not inform the trial court that Petitioner was a first-time violent felony offender (*id.* at 2, ¶ 4); and defense counsel did not inform the trial court that Petitioner wrote letters of apology and apologized in person to the victim, who was his friend (*id.*, ¶ 5).

Docket 10 asserts that no DNA was found on the knife recovered on College Avenue in Elmira.  (Dkt. 10 at 1).  Docket 10 also asserts that Petitioner's sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment and that defense counsel was ineffective for failing to assert that: Petitioner told the trial court twice before he pleaded guilty that he did not intend to injure the victim; the victim had been Petitioner's friend for two years; Petitioner wrote letters of apology to the victim; Petitioner apologized in person to the victim before his conviction; this was Petitioner's first violent felony conviction; Petitioner did not forcibly steal the victim's cell phone; the victim gave Petitioner permission to use the cell phone; and Petitioner returned the victim's cell phone the following day.  (Dkt. 10 at 2-3).  Petitioner further asserts that he "did not self-incriminate" himself in violation of the Fifth Amendment because, contrary to the victim's grand jury testimony, he did not send messages to the victim on Facebook messenger.  (*Id.*).  According to Petitioner, he did not have a cell phone, he did not know his Facebook password, and he did not have internet access at the jail.  (*Id.*).

Docket 12 asserts that Petitioner's uncle fabricated his grand jury testimony that he witnessed the stabbing.  (Dkt. 12 at 1).  According to Petitioner, he went inside his uncle's

house to tell him about the stabbing, and when they both returned outside, the victim was gone.  (*Id.*).

Docket 13 states that Petitioner's conviction and incarceration violate substantive due process in violation of the Fourteenth Amendment because the victim's and Petitioner's uncle's statements and grand jury testimony "invol[v]ed deliberate indifference/inconsist[enc]ies at the least and malicious disregard for wellbeing of [Petitioner's] incarceration in pursuit of profit at worst because of ineffective assistance of counsel, invalid plea, . . . and excessive & harsh sentencing."  (Dkt. 13 at 1).

Docket 14 claims that defense counsel was ineffective for failing to advise Petitioner of his rights to testify at the grand jury and at trial.  (Dkt. 14 at 1).

Lastly, Docket 16 discusses the lack of fingerprints and blood on the knife and states that the absence of DNA evidence on the knife, the sweatshirt, and the bloody t-shirt found in the vicinity of the crime proves Petitioner's innocence.  (Dkt. 16 at 1).

On December 20, 2024, Respondent answered the petition (Dkt. 28) and filed a memorandum of law (Dkt. 29) in opposition.  Respondent concedes that the claims Petitioner raised on direct appeal are exhausted but asserts that the remaining claims either are fully unexhausted, should be deemed exhausted but procedurally defaulted due to the absence of available state remedies, or are procedurally defaulted under the adequate and independent state ground doctrine.  Respondent asserts that the petition is a mixed petition containing exhausted and unexhausted claims and should be denied on the merits pursuant to 28 U.S.C. § 2254(b)(2) because all of the claims are plainly meritless.

Petitioner then filed a document which the Court construed as a motion to stay this habeas proceeding.  (Dkt. 32).  Petitioner asserts—contrary to what he alleged in the form petition—that all grounds in the petition are fully unexhausted and that the 440.10/440.20 motion would exhaust all of his claims.  (*Id.* at 1-2).

Respondent opposes the motion to stay because Petitioner has not shown "good cause" for the failure to exhaust his unexhausted claims or that his unexhausted claims are not plainly or are at least potentially meritorious.  (Dkt. 38).  Respondent again argues that the Court should exercise its authority to deny the entire petition on the merits pursuant to 28 U.S.C. § 2254(b)(2).  (*Id.*).  Respondent also has submitted additional state court records, consisting of all the documents submitted by Petitioner in connection with the 440.10/440.20 motion and the trial court's April 7, 2025 order denying the motion.  (Dkt. 38-1).

Petitioner filed a duplicate motion to stay (Dkt. 40) and a reply/response asserting that he has fulfilled the "good cause" requirement for obtaining a stay (Dkt. 44).

## III.  <u>DISCUSSION</u>

### A.    **Characterization of Dockets 8, 10, 12, 13, 14, and 16**

The Court must determine how to characterize Dockets 8, 10, 12, 13, 14, and 16, which were docketed as "Continuation of Exhibits."  All of these documents begin with a statement to the effect of, "I would like to add this information to my case that is on file." (*See*, *e.g.*, Dkt. 8 at 1).  Broadly interpreted, these documents appear to be requests for leave to amend the petition to include the allegations therein.  *See Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (stating that "courts should review habeas petitions

- 23 -

with a lenient eye" "due to the *pro se* petitioner's general lack of expertise); *see also Harris v. United States*, No. 6:14-CR-6149 EAW, 2020 WL 4059198, at *2-3 (W.D.N.Y. July 20, 2020) ("In reviewing a *pro se* petition for habeas corpus, the Court must be mindful that '[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" ) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted in original; further citation omitted)).

Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by 28 U.S.C. § 2242; Fed. R. Civ. P. 81(a)(2); and Rule 11 of the Rules Governing Section 2254 Cases in the District Courts, 28 U.S.C. foll. § 2254, "allows pleading amendments with 'leave of the court' any time during a proceeding."  *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(a)).  "Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' i.e., without seeking court leave."  *Id.* (citing Fed. R. Civ. P. 15(a)); *see also id.* at 663 (emphasizing the "pleader's right to amend without leave of court 'any time before a responsive pleading is served'" (quoting Fed. R. Civ. P. 15(a)).

Petitioner filed his petition (Dkt. 1) on May 7, 2024, in the Northern District of New York; the case was transferred to this District on August 14, 2024.  (Dkt. 5).  Prior to Respondent filing and serving its response to the petition, Petitioner filed Dockets 8, 10, 12, 13, 14, and 16.  They are all dated May 7, 2024, although they were postmarked and received by the Clerk of Court on different dates.  In the interest of efficiency, and because the claims asserted in Dockets 8, 10, 12, 13, 14, and 16 are easily dismissed on the merits,

the Court deems them collectively to be the amendment permitted as of right prior to Respondent's response to the petition.  Accordingly, the petition, as amended, consists of Dockets 1, 8, 10, 12, 13, 14, and 16.

### B.    Motion to Stay

#### 1.    Standard for Obtaining a Stay

Before *Rhines v. Weber*, 544 U.S. 269 (2005), the Second Circuit routinely employed a stay-and-abeyance approach when confronted with a "mixed petition"—that is, a habeas petition brought by a state prisoner under 28 U.S.C. § 2254 that included some exhausted claims and some fully unexhausted claims.  *See Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001).  In *Rhines*, the Supreme Court approved of *Zarvela*'s stay-and-abeyance procedure but stated that it "should be available only in limited circumstances" so as not to undermine the "twin purposes" of the federal habeas statute: "encouraging finality" and "streamlining federal habeas proceedings."  544 U.S. at 277.

The Supreme Court explained that because granting a stay "effectively excuses a petitioner's failure to present his claims first to the state courts," a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  *Id.*  However, "good cause" is not sufficient on its own; the petitioner also must show that the unexhausted claims have potential merit.  *See id.* ("[E]ven if a petitioner had good cause for th[e] failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." (citing 28 U.S.C. § 2254(b)(2)).  The Supreme Court accordingly placed the following parameters on the district court's discretion to grant

a stay-and-abeyance: (1) the petitioner demonstrates "good cause" for failing to exhaust the claims in state court before bringing the federal habeas petition; (2) the unexhausted claims are "potentially meritorious" or at least not "plainly meritless;" and (3) there is no indication of "intentionally dilatory litigation tactics" on the petitioner's part. *Id.* at 277-78.

As "[t]he stay and abeyance procedure set forth in *Rhines* is applicable when the Court is presented with a 'mixed' petition—when the petition is comprised of both exhausted and unexhausted claims," *Williams v. Shanley*, No. 20CV688JLSMJR, 2022 WL 17629736, at *4 (W.D.N.Y. Dec. 12, 2022), the Court first considers the exhaustion status of the claims raised in the petition. The Court then considers the application of the *Rhines* factors to this case.

### 2.    Exhaustion Status of Petitioner's Claims

A federal court may not consider a petition for a writ of habeas corpus by a prisoner in state custody unless the prisoner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, the prisoner must "'fairly present' his constitutional claim to the state courts . . . 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005); further citation omitted).

Ground One (Dkt. 1 at 5) asserts the denial of Petitioner's right to present a "mental health defense." Respondent notes that although Petitioner "did raise his mental health issues on direct appeal, he did so in the context of his involuntary plea, ineffective

assistance, and harsh sentence claims" but "[h]e did not assert that he was entitled to present a mental health defense due to these issues." (Dkt. 29 at 33 n.8 (citing SR: 21-22, 29-30, 44)). Respondent argues that it is fully unexhausted and should be denied under the authority of 28 U.S.C. § 2254(b)(2). The Court agrees that it is unexhausted because the information regarding Petitioner's mental health issues, diagnoses, and prescribed medications are not part of the record on appeal. Therefore, the claim would not be subject to mandatory dismissal under C.P.L. § 440.10(2)(c) if raised in a motion to vacate under C.P.L. § 440.10(1).

The claims in Ground Two (Dkt. 1 at 7) challenging the voluntariness of Petitioner's guilty plea are partially exhausted and partially unexhausted. Some of the allegations were raised on Petitioner's direct appeal; Petitioner presented them in his opening appellate brief to the Appellate Division and then sought leave to appeal to the New York Court of Appeals. Therefore, at least to the extent that they were based on materials within the record on appeal,[10] they were properly exhausted. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that to properly exhaust claims based on the trial record, a defendant in New York State "must first appeal his or her conviction to the Appellate Division, and

---

[10] The rule consistently followed by appellate courts in New York State is that claims based on matters *dehors* the appellate record cannot be considered on direct appeal. *See*, *e.g.*, *Matter of Joseph J.D.*, 229 A.D.3d 104, 112 (2d Dep't 2024) ("The general rule, of course, is that an appellate court is limited to consideration of facts contained in the appellate record, and matters outside the record will not be considered.") (collecting cases); *People v. Ortiz*, 143 A.D.2d 150, 151 (2d Dep't 1988) ("The defendant concedes, however, that neither comment is reflected in the record on appeal and, therefore, any such claim is beyond this court's review.").

then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

The remaining allegation in Ground Two asserts that Petitioner's plea was involuntary due to the absence of his DNA on a knife recovered near the crime scene. Respondent asserts that this claim is unexhausted but must be deemed exhausted because it "is record-based—the record that his DNA was not on the knife, that [P]etitioner claims he only learned about after his plea—so it had to have been raised on direct review; it would have to be denied as procedurally barred [under C.P.L. § 440.10(2)(c)] if raised in a CPL § 440.10 motion." (Dkt. 29 at 32).

However, the state court records submitted by Respondent (Dkt. 30-2) do not contain "the record that his DNA was not on the knife." (*Id.*). In this Court's opinion, the allegation that Petitioner's guilty plea was involuntary based on the lack of positive DNA results linking him to the knife is based on matters outside the record which were not able to be presented on direct appeal. *See, e.g.*, *Linnen v. Poole*, 766 F. Supp. 2d 427, 475 (W.D.N.Y. 2011) ("To the extent that [the state petitioner] wanted appellate counsel to raise claims that were not based upon evidence in the record, such claims could not assist him in obtaining reversal of his conviction because claims and matters outside the record cannot be raised on direct appeal.") (collecting cases); *People v. Hymes*, 34 N.Y.3d 1178, 1179 (2020) ("To the extent defendant wishes to advance such a claim based upon matters outside the record, he may commence a proceeding pursuant to CPL [§ ]440.10.") (collecting cases).

Petitioner could raise the allegation regarding the lack of DNA evidence linking him to the knife in a motion to vacate the judgment under C.P.L. § 440.10 and not face mandatory dismissal under C.P.L. §440.10(2)(c).  Therefore, he is not without available state court remedies, and the claim should not be deemed exhausted under 28 U.S.C. § 2254(c).

Next, Ground Three alleging ineffective assistance of counsel appears to be partially exhausted, at least as far as it raises allegations that were raised on direct appeal.  However, all of the other allegations of ineffectiveness were raised before the trial court in connection with the 440.10/440.20 motion, although some of those allegations were not included in the original motion papers.  In fact, the trial court suggested that some of the allegations were not properly before it because Petitioner did not raise them until he filed his reply and subsequent pleadings.  In addition, some of the allegations of ineffective assistance do not appear to have been raised in the 440.10/440.20 motion at all.

Even the allegations properly raised in the original 440.10/440.20 motion papers are unexhausted.  The trial court denied the 440.10/440.20 motion on April 7, 2025.  However, Petitioner "still was entitled to seek discretionary leave to appeal the denial of that motion, and indeed was required to do so in order to exhaust any of the claims raised therein." *Vincent v. Lape*, No. 07-CV-6007L, 2007 WL 4224198, at *3 (W.D.N.Y. Nov. 26, 2007) (footnote omitted).  Under C.P.L. § 450.15(1) and (2), a defendant may appeal the denial of a C.P.L. § 440.10 motion to vacate the judgment and the denial of a C.P.L. § 440.20 motion to set aside the sentence "provided that a certificate granting leave to appeal is issued pursuant to [C.P.L. § ]460.15."  C.P.L. § 450.15.  "Under C.P .L. § 460.10(4), '[a]n

appeal by a defendant to an intermediate appellate court by permission, pursuant to [C.P.L. § ]450.15, is taken' by applying for a § 460.15 certificate for leave '[w]ithin thirty days after service upon the defendant of a copy of the order sought to be appealed . . . .'" *Vincent*, 2007 WL 4224198, at *3 (alterations and ellipsis in original) (quoting C.P.L. § 460.14(a)). New York State law does not allow a further discretionary appeal of the denial of relief under C.P.L. §§ 440.10 and 440.20. *Ramos v. Walker*, 88 F. Supp. 2d 233, 234, 235 & nn.3, 9 (S.D.N.Y. 2000) (citing, *inter alia*, *People v. Grossmann*, 87 N.Y.2d 1003, 1003 (1996) ("[N]o application for leave to appeal pursuant to [C.P.L. § ]460.20 will lie from an order of a single [j]ustice of the Appellate Division denying leave to appeal to that [c]ourt pursuant to [C.P.L. § ]460.15.")).

Because Petitioner has not sought leave to appeal the trial court's denial of the 440.10/440.20 motion, the claims properly raised in the motion remain unexhausted, as do the claims that were raised in the reply papers or not raised at all. *See*, *e.g.*, *Ture v. Racette*, No. 9:12cv01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (finding that the petitioner did not complete one full round of appellate review as to claims raised in his C.P.L. § 440.10 motion where he did not seek leave to appeal the denial of that motion); *Kindell v. Capra*, No. 20-CV-304 (RA) (OTW), 2024 WL 4362433, at *4 (S.D.N.Y. May 6, 2024) ("A claim is also deemed fully exhausted when the Appellate Division has denied leave to appeal a denial of a motion filed pursuant to [C.P.L.] § 440.20[.]"), *adopted*, No. 20-CV-304 (RA), 2024 WL 4362880 (S.D.N.Y. Sept. 30, 2024).

"Section 2254(c) provides that a habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the

law of the State to raise, by any available procedure, the question presented." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (ellipsis in original) (quoting 28 U.S.C. § 2254(c)). Respondent asserts that the claims raised in the 440.10/440.20 motion cannot be deemed exhausted and procedurally defaulted because, although Petitioner's application for leave to appeal was due 30 days after the trial court denied the 440.10/440.20 motion on April 7, 2025, Petitioner "has until May 7, 2026[,] to seek permission to file a late leave application." (Dkt. 38 at 6 (citing C.P.L. § 460.30(1)).

In order to avail himself of procedure outlined in C.P.L. § 460.30(1) for obtaining an extension of time for taking an appeal, Petitioner would have to show that his failure to file his application on time resulted from improper conduct by a public servant or Petitioner's attorney; the death or disability of Petitioner's attorney; or the inability of Petitioner and his attorney to have communicated about whether an appeal should be taken within the 30-day period for filing a leave application. C.P.L. § 460.30(1). Moreover, the inability to communicate "must have been through no lack of due diligence or fault" on the part of Petitioner and his attorney. *Id.* None of these exceptions appear to apply here, especially since Petitioner filed his 440.10/440.20 motion *pro se*.

In any event, the Court agrees that the claims in the 440.10/440.20 motion proper, as well as those raised in the reply and subsequent submissions, remain unexhausted. Even if Petitioner could not obtain an extension of time to file a late application for leave to appeal under C.P.L. § 460.30(1), he could file additional applications for relief under C.P.L. §§ 440.10 and 440.20 raising the same claims. There is no statute of limitations applicable to motions under C.P.L. §§ 440.10 and 440.20, as they may be made "[a]t any

time after the entry of a judgment." C.P.L. § 440.10(1), *id.* § 440.20(1). Furthermore, there is no cap on the number of such motions that may be filed, though the trial court would have the discretion to deny any claims that petitioner could have raised in his prior motion but failed to do so. *See* C.P.L § 440.10(3)(c) (stating that "the court may deny a motion to vacate a judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so"); *id.* § 440.20(3) (stating that "the court may deny such a motion when the ground or issue raised thereupon was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment").

The Court need not devote further time to analyzing the exhaustion status of the remaining claims asserted by Petitioner in Dockets 1, 8, 10, 12, 13, 14, and 16 because it is unnecessary to resolution of the motion to stay or the amended petition. Having found that the amended petition is a mixed petition containing at least some unexhausted claims, the Court may proceed to analyze the *Rhines* factors.

"To date, '[n]either the Supreme Court nor the Second Circuit has yet defined the contours of "good cause" in the context of stay and abeyance, and district courts in this Circuit have varied in their interpretations of the standard for "good cause."'" *Williams v. Shanley*, No. 20CV688JLSMJR, 2022 WL 17629736, at *3 (W.D.N.Y. Dec. 12, 2022) (quoting *Glover v. Herbert*, 431 F. Supp. 2d 335, 337 (W.D.N.Y. 2006) (collecting cases)). "[T]he majority" of district courts that have "addressed the issue at length have analogized the 'good cause' requirement to the requirement that a habeas petitioner demonstrate

'cause' to excuse other types of procedural defaults." *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006) (collecting cases). "These courts have reasoned that 'good cause,' like 'cause' in the procedural default context, must arise 'from an objective factor external to the petitioner which cannot fairly be attributed to him or her.'" *Id.* (citations omitted).

Petitioner asserts in conclusory fashion that he has shown "good cause" based on his lack of legal knowledge, his mental health, and the lack of counsel's assistance in preparing his 440.10/440.20 motion. (Dkt. 44 at 1-2). "Courts have consistently rejected claims that ignorance satisfies the good cause standard." *Murphy v. Warden of Attica Corr. Facility*, No. 20CIV3076PAEGWG, 2022 WL 1182043, at *2 (S.D.N.Y. Apr. 19, 2022) (collecting cases); *see also*, *e.g.*, *Stephanski v. Sup't of Upstate Corr. Facility*, 433 F. Supp. 2d 273, 279 (W.D.N.Y. 2006) (holding that *pro se* petitioner could not show "good cause" to exhaust his ineffective assistance of counsel claim in state court based solely on his assertions that "he is a layman, has no legal training, a limited education with poor comprehension skills, and limited access to legal materials or persons trained to provide adequate legal assistance") (internal quotation marks omitted).

Moreover, Petitioner has not explained how his lack of legal training or his mental health issues prevented him from filing an application for a certificate granting leave to appeal the denial of his 440.10/440.20 motion. After all, Petitioner was able to file an extensive motion along with reply papers and additional submissions, despite his mental health issues and lack of legal training.

Finally, Petitioner has not shown "good cause" based on the lack of appointed counsel in connection with his 440.10/440.20 motion. As an initial matter, he had no constitutional right to counsel in connection with a post-conviction, collateral application such as his 440.10/440.20 motion. *Pratt v. Upstate Corr. Facility*, 413 F. Supp. 2d 228, 249 (W.D.N.Y. 2006) (citing, *inter alia*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Moreover, this argument is essentially another way of attempting to show "good cause" based on Petitioner's lack of formal legal training, which the Court has found unavailing.

In sum, none of the foregoing factors, singly or together, amount to "good cause." "The absence of 'good cause' for the failure to exhaust is fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines*, 544 U.S. at 277 ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is *only* appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." (emphasis supplied))). Furthermore, as discussed below, all of Petitioner's claims are plainly meritless. Given Petitioner's failure to show good cause or that his claims are not plainly meritless, it would be an abuse of discretion to stay the petition. Petitioner's motion for a stay-and-abeyance (Dkt. 32, 40) is denied with prejudice.

The Court therefore proceeds to adjudicate the mixed petition under the authority of 28 U.S.C. § 2254(b)(2). "The rationale behind § 2254(b)(2) has been described as 'spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.'" *Williams v. McCarthy*, 708 F. Supp.

3d 309, 327 (W.D.N.Y. 2023) (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)).  "In this Circuit, the various formulations for the proper standard to be used when relying on § 2254(b)(2) share 'the common thread of disposing of unexhausted claims that are unquestionably meritless.'"  *Id.* (quoting *Keating*, 708 F. Supp. 2d at 299 n.11 (collecting cases); citing *Barnes v. Uhler*, No. 6:18-CV-06428 EAW, 2021 WL 5176667, at *14 (W.D.N.Y. Nov. 8, 2021) (relying on the "unquestionably meritless" standard to dismiss unexhausted claims)).  All of the petition's claims are readily denied on the merits, and the potentially unexhausted claims in particular are "unquestionably meritless."

### C.    Procedural Default

As noted above, Respondent has raised the affirmative defense of procedural default as to certain of Petitioner's claims.  "When the underlying claims are obviously without merit, a habeas court may bypass procedural questions to reach the merits of a habeas petition."  *Williams*, 708 F. Supp. 3d at 327 (citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)).  Respondent's assertions of procedural default involve potentially complicated issues of state law, while the underlying claims are clearly without merit.  For these reasons, the Court will exercise its discretion to bypass further discussion of the issue of procedural default.

### D.    Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97

(2011) ("*Richter*"). Under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." *Id.* § 2254(e)(1).

However, "when it is unclear whether AEDPA deference applies," courts may "deny writs of habeas corpus under § 2254 by engaging in *de novo* review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("*Thompkins*"). In resolving Petitioner's petition, the Court has followed the *Thompkins* analytical approach and has reviewed the claims under a *de novo* standard.

### E.    Merits of the Amended Petition (Dkt. 1, 8, 10, 12, 13, 14, and 16))

#### 1.    Denial of Right to Present a Mental Health Defense (Ground One, Dkt. 1 at 5)

Petitioner claims he was denied his right to present a "mental health defense" based on his 2018 diagnoses of anxiety, depression, PTSD, schizophrenia, and legal blindness in his left eye (Dkt. 1 at 5). Respondent argues that this claim is foreclosed by Petitioner's voluntary guilty plea and, in any event, meritless. (Dkt. 29 at 33-36).

The Supreme Court has held that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, when a defendant has "admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge[.]" (citing *McCarthy v. United States*, 394 U.S. 549, 566 (1969)). "[I]n the absence of a court-approved reservation of issues for appeal," a guilty plea "waives all challenges to the prosecution except those going to the court's jurisdiction," *id.* (citing *United States v. Sykes*, 697 F.2d 87, 89 (2d Cir. 1983); *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir. 1981)).

"Although the Supreme Court has never ruled on the question of whether insanity is a jurisdictional issue, several courts have held it to be non-jurisdictional." *Jones v. Walsh*, No. 06 CIV. 225(JGK), 2007 WL 4563443, at *5 (S.D.N.Y. Dec. 27, 2007) (citing *Bakic v. United States*, 971 F. Supp. 697, 700 (N.D.N.Y. 1997) (finding that voluntary guilty plea precludes subsequent collateral attack based on insanity defense); *United States v. Donohoe*, 458 F.2d 237, 239 (10th Cir. 1972) (finding that insanity defense was waived due to guilty plea); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971) (finding that insanity defense is non-jurisdictional)); *see also Ture*, 2014 WL 2895439, at *7 ("[A]ny claim that the trial court should not have accepted his *Alford* plea and instead

adjudicated him not guilty by reason of mental disease or defect is barred by his guilty plea." (citing *Bakic*, 971 F. Supp. at 700)).

Even if Petitioner's claim is not foreclosed by his guilty plea, it is meritless. Petitioner does not specify the legal authority for the "mental health defense" he allegedly was precluded from raising.  Under New York State law, there are essentially two types of defenses based on psychiatric evidence.  First, a defendant in New York State may assert the affirmative defense of "not responsible by reason of mental disease or defect" if, at the time of the crime, he was suffering from a "mental disease or defect" and, as a result, "lacked substantial capacity to know or appreciate either: (1) the nature and consequences of such conduct; or (2) that such conduct was wrong."  P.L. § 40.15.  "This is known colloquially as the insanity defense."  *Barletta v. Superintendent*, No. 23 CIV. 6260 (PMH)(JCM), 2024 WL 5682388, at *8 (S.D.N.Y. May 8, 2024), *adopted sub nom. Barletta v. Sup't, Elmira Corr. Fac.*, No. 23-CV-06260 (PMH), 2025 WL 993310 (S.D.N.Y. Apr. 1, 2025).  The defendant bears the burden of providing both elements of the so-called "insanity defense" in P.L. § 40.15 by a preponderance of the evidence.  *People v Gilbert*, 199 A.D.3d 1048 (3d Dep't 2021) (citing *People v Kohl*, 72 N.Y.2d 191, 195 (1988)).

In addition, New York State law allows a defendant to assert "*mens rea*-type defense," which "serves to negate a specific intent necessary to establish guilt."  *People v. Almonor*, 93 N.Y.2d 571, 580 (1999).

Petitioner has not pointed to anything in the record that could have supported a finding, by a preponderance of the evidence, that he lacked the substantial capacity to know

or appreciate either (1) the nature and consequences of stabbing Ludwig several times with a knife; or (2) that such conduct was wrong. Thus, even assuming he had a qualifying mental disease or defect, he could not satisfy the elements of P.L. § 40.15. As for the *mens rea*-type defense, Petitioner did assert at one point that he did not intend to cause serious physical injury to Ludwig, but he never attributed the alleged lack of intent to his alleged mental health issues. Furthermore, Petitioner expressly waived his ability to raise any affirmative defenses as part of his knowing, voluntary, and intelligent guilty plea. This claim is meritless and does not warrant habeas relief.

### 2.     Involuntary Guilty Plea (Ground Two, Dkt. 1 at 7)

Petitioner claims that his plea was not knowing, voluntary, and intelligent because: the trial court made "unwarranted threats of a lengthy prison sentence," Petitioner made statements that negated the element of intent, and the trial court "did not resolve[] all doubts" about the voluntariness of Petitioner's plea in light of his mental diagnoses and substance abuse issues (Dkt. 1 at 7).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial." *Brady v. United States*, 397 U.S. 742, 748 (1970). Accordingly, a plea constitutes a waiver of the following constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *Parke v. Raley*, 506 U.S. 20,

29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).  Because a guilty plea operates as a waiver of important constitutional rights, it "is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks omitted) (quoting *Brady*, 397 U.S. at 748).

As a general rule, a finding of voluntariness is not undermined by a defendant's after-the-fact "self-serving and contradictory" assertions.  *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); other citations omitted).  "[T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74.  A "strong presumption of accuracy," *Juncal*, 245 F.3d at 171, attaches to a "defendant's sworn statements, made in open court . . . that he understood the consequences of his plea[,]" *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001).

### a.    The Plea Was Knowing, Intelligent, and Voluntary

In light of Petitioner's statements at the attempted plea on April 5, 2021, suggesting he wanted to raise the defenses of intoxication and/or justification, the trial court sought to understand what had changed in the interim.  Defense counsel stated that Petitioner had gotten "confused" and had "questions" about the defenses of intoxication and justification.

(04/08/21 T: 3). Petitioner had asked for "more detail" about how they applied to his case. (*Id.*). After "several" conversations during which Miller explained the defenses "in detail," "all" of Petitioner's questions were answered, and he now wanted to plead guilty. (*Id.*). Petitioner confirmed that defense counsel's summary of their conversations was true, and that he was prepared to go ahead with the plea. (*Id.*).

Later during the proceeding on April, 8, 2021, the trial revisited the defenses of justification and intoxication, and Petitioner affirmed that he understood those defenses, how they applied to his case, and wanted to waive them. (04/08/21 T: 12-14).

Prior to the factual allocution, the trial court carefully discussed each of the trial rights that Petitioner would be giving up by pleading guilty, and Petitioner confirmed that he understood the rights he was foregoing and that he wanted to plead guilty nonetheless. (04/08/21 T: 6-10). Petitioner agreed that he was pleading guilty because he thought it was his "best course of action." (04/08/21 T: 9).

At no time during the April 8, 2021 appearance did Petitioner expressly state or implicitly suggest that he was innocent, that he did not remember what had happened, or that he did not intend to cause serious physical injury to Ludwig. During the factual allocution, Petitioner unhesitatingly explained the events leading up to the stabbing. Specifically, Petitioner told the trial court that while he and Ludwig were cleaning up Petitioner's uncle's house, they got into a fistfight after Ludwig threw a hat at Petitioner. Petitioner's uncle told them to go outside, which they did. The fistfight continued until Petitioner drew a knife and stabbed Ludwig "a few times." (04/08/21 T: 12). Petitioner confirmed that when he stabbed Ludwig, he intended to cause serious physical injury. (*Id.*).

Petitioner's own words, uttered under oath in open court, negated any suggestion that Petitioner was acting in self-defense or that he was intoxicated, much less too intoxicated to form the requisite criminal intent.

Furthermore, the trial court asked Petitioner more than once if anything had been promised to him—other than what was detailed in the plea offer itself—to convince him to forego his right to a trial and plead guilty. (04/08/21 T: 9, 14). Petitioner each time responded, "No." (04/08/21 T: 9, 14). Petitioner confirmed that he had had enough time to discuss the guilty plea with Miller. (04/08/21 T: 9).

The record demonstrates that Petitioner was aware of, and understood, the rights— as well as the potential trial defenses—he was waiving as a consequence of pleading guilty. Petitioner's plea clearly was a voluntary choice, made knowingly and intelligently with full awareness of the relevant factual circumstances and legal consequences.

### b.    Alleged Coercion

Despite Petitioner's sworn assertions that he was not induced to plead guilty by anything anyone had said to him, outside the terms of the plea offer, he now claims that the trial court made statements on November 23, 2020, and April 5, 2021, about his sentencing exposure that were coercive.

At the November 2020 appearance, the trial court told Petitioner that by rejecting the then-pending plea offer with a sentence of 15 years in prison, he faced a possible sentence of 25 years in prison on each count of the indictment; that the prosecutor likely would not extend a better offer; and that the trial court would not entertain a better offer.

(11/23/20 T: 2-4). But Petitioner could not have been coerced by the trial court's statements because he did not accept the 15-year offer.

At the April 5, 2021 appearance, the trial court again noted that the maximum sentence for attempted murder, the top count of the indictment, was 25 years in prison. The trial court observed that "[m]ost" defendants convicted of attempted murder "get 25 years." (04/05/21 T: 3-4). The trial court commented that if convicted of attempted murder, Petitioner's sentence "would be damn close" to 25 years. (*Id.*). With regard to the 10-year offer for a guilty plea to first-degree assault, the trial court said that Petitioner was not likely to receive a better offer and that, in any event, it would "not accept a lighter offer." (*Id.*). Moreover, the trial court indicated that a future offer would require Petitioner to plead guilty to a more serious felony, attempted murder. (*Id.*). The trial court cautioned Petitioner that, notwithstanding the likelihood of a longer sentence after trial, he should not plead guilty if, in fact, he was not guilty. (*Id.*). Ultimately, Petitioner did not plead guilty on April 5, 2021.

As an initial matter, this Court is entitled to rely upon Petitioner's sworn statements in open court that he was pleading guilty because he believed it was in his best interests to do so, not because he had been pressured, coerced, or threatened. (04/08/21 T: 9, 14). In any event, the Supreme Court clearly has found that it is "permissible" for a judge to "confront[ ] a defendant with the risk of more severe punishment," even though doing so "clearly may have a 'discouraging effect on the defendant's assertion of his trial rights.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 30 (1973)).

Here, Petitioner "has made no allegations 'that the trial court did not believe that its statements were accurate or that the court was motivated by anything but a desire to fully inform [him] of the consequences of going to trial.'" *Gil v. Mazzuca*, No. 03 CIV.3316 WHP GWG, 2004 WL 389103, at *8 (S.D.N.Y. Mar. 3, 2004) (quoting *Oyague v. Artuz*, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (plea not coerced where petitioner was allegedly told by the trial court off-the-record that if he went to trial and was convicted he would be facing a likely sentence of 65 years to life in prison)), *adopted*, No. 03CIV.3316(WHP)(GWG), 2004 WL 3524334 (S.D.N.Y. Sept. 19, 2004). "Case law is replete with instances where similar warnings from a trial judge as to a potential sentence after trial have passed constitutional muster." *Id.* (collecting cases); *see also Oguntunji v. Artus*, No. 05-CV-1240 (ADS), 2007 WL 1028934, at *6 (E.D.N.Y. Mar. 26, 2007) (finding judge's statement, "'In all likelihood, if this defendant went to trial and was convicted, he would be getting 25. Now, I don't expect that I would run the sentences consecutively, but he could get 25 on top of 25. This is a very serious case,'" was not coercive because it did "not unequivocally convey that the sentencing court would definitely impose the maximum allowable sentence"). Petitioner's claims of coercion by the trial court are meritless.

Petitioner also asserts that defense counsel pressured him into pleading guilty, but he has never provided any specific facts about what counsel said or did that was coercive. Moreover, there is nothing in the record to substantiate Petitioner's claim. Vague and conclusory allegations such as this do not state a cognizable ground for habeas relief. *See Miller v. Fennessey*, No. 1:20-CV-00354 EAW, 2024 WL 2214808, at *17 (W.D.N.Y.

May 16, 2024) (dismissing ineffectiveness claims as "too vague to state colorable grounds for habeas relief" where they did "not identify any specific errors by defense counsel or appellate counsel" (citing *Mills v. Lempke,* No. 11-CV-0440 MAT, 2013 WL 435477, at *23 (W.D.N.Y. Feb. 4, 2013) ("Federal district courts cannot grant habeas relief based upon unsubstantiated surmise, opinion or speculation." (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995)))). Accordingly, this claim is dismissed.

### c.    Petitioner's Statements on April 5, 2021

As noted above, Petitioner made statements on April 5, 2021, suggesting that he had acted in self-defense (the victim hit him first) and that he had been too intoxicated to form the requisite intent (he did not remember whether the victim had a weapon because he and the victim had been drinking). After Petitioner claimed, contrary to defense counsel's representations, that they had not discussed the defenses of justification and intoxication, the trial court aborted the plea hearing, saying it could not accept a guilty plea.

Three days later, on April 8, 2021, defense counsel explained why the previous plea had faltered and what had occurred since that time to change Petitioner's viewpoint; namely, additional discussions between Petitioner and defense counsel regarding justification and intoxication and how they applied to his case. Petitioner confirmed that all his questions had been answered by defense counsel and that he wanted to proceed. Under further questioning, Petitioner assured the trial court that he understood the two defenses and wanted to waive them and plead guilty. Petitioner has not overcome the presumption of verity afforded to his sworn statements made in open court. This claim is meritless and is dismissed.

### d.    Mental Health and Substance Abuse Issues

Petitioner asserts that notwithstanding the finding by two psychiatrists that he was competent to stand trial, he could not validly plead guilty plea because he had substance abuse issues and mental health diagnoses (depression and anxiety) for which he was prescribed medications including Prozac and Zyprexa.  (SR: 21).  Appellate counsel asserted, without record support, that the medications Petitioner had been prescribed "were powerful [and] mind altering" and "arguably[] impact[ed] his level of understanding and comprehension of the consequences."  (*Id.*).

However, Petitioner did not identify any particular ways in which his mental health and substance abuse issues or his prescription medications actually affected his ability to waive his rights voluntarily, knowingly, and intelligently.  Instead, Petitioner suggests that such impairment cannot be ruled out because the trial court did not inquire whether Petitioner was under the influence of alcohol or illegal drugs, was taking any prescription medications, or had any conditions that would prevent him from understanding the plea proceeding.

While it would have been better practice for the trial court to have asked those questions at the beginning of the colloquy, the trial court's omission does not invalidate Petitioner's plea under the Due Process Clause.  "[T]he Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness[, substance abuse,] or medication regimen."  *Royster v. Perez*, No. 08 CV 131 (ARR), 2009 WL 1505278, at *4 (E.D.N.Y. May 28, 2009); *see also Jones v. Superintendent*, No. 9:15-CV-01152-JKS, 2018 WL 11467920, at *10 (N.D.N.Y. Feb. 12, 2018) (same) (citing, *inter*

*alia*, *Musumeci v. NYS Dep't of Corr.*, No. 07-CV-6384, 2010 WL 2287486, at \*4 (W.D.N.Y. June 1, 2010)).

Here, nothing in the transcripts calls into question Petitioner's "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," *Godinez v. Moran*, 509 U.S. 389, 396 (1993), and to have "a rational as well as factual understanding of the proceedings against him," *id.*  For instance, on April 5, 2021, Petitioner asked about the possibility of getting a plea offer with a shorter sentence than 10 years in prison; after learning that 10 years was the shortest sentence he would be offered, he decided to accept that deal.  It is reasonable to infer that Petitioner rationally understood the options before him and chose the one that guaranteed him the least amount of prison time.  (04/05/21 T: 4-5).  Petitioner's statements made later on during the April 5, 2021 hearing do not suggest he lacked a rational and factual understanding of the proceedings; rather, they show he was not willing, at that point in time, to accept responsibility for the stabbing.  (04/05/21 T: 9-11).

Further, at the April 8, 2021 proceeding, Petitioner displayed no confusion and responded coherently to all of the trial court's questions.  (04/08/21 T: 3-11).  When asked to explain why he was pleading guilty to first-degree assault, Petitioner answered without hesitation and provided a concise explanation of his conduct on the night of May 30, 2020.  (04/08/21 T: 8).  Petitioner has not established that his mental health diagnoses, prescription medication, and substance abuse issues had any effect on his ability to waive his rights and plead guilty knowingly, voluntarily, and intelligently.  This claim is meritless and is dismissed.

### e.    Lack of Petitioner's DNA on the Knife

According to Petitioner, his plea was not knowing, voluntary, or intelligent because forensic testing of the knife recovered near the crime scene yielded negative results for the presence of his DNA.  (Dkt. 1 at 20).  Respondent interprets this as a claim that Petitioner did not know that his DNA was not on the knife, and therefore his guilty plea was not knowing and intelligent.  (Dkt. 29 at 31-32).  However, as Respondent also notes, Petitioner himself states (Dkt. 1 at 16) that the knife was tested for DNA in July 2020, nine months before he pleaded guilty.  Thus, it is reasonable to conclude that he received those results from defense counsel as part of the discovery package.

Even if Petitioner was unaware of the DNA results, he has not established that this invalidated his guilty plea.  The Supreme Court has held that "the Constitution . . . does not require complete knowledge [by the defendant] of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (1970) (holding that government's failure to provide a defendant with material impeachment information regarding the government's witnesses prior to the guilty plea did not render the guilty plea unknowing or involuntary).

An alternative interpretation of the DNA-related allegations is that Petitioner believes that the absence of DNA on the knife establishes his actual innocence and invalidates his guilty plea.  However, as Respondent argues (Dkt. 29 at 33), the lack of DNA linking him to the knife does not suggest that he is actually innocent of stabbing Ludwig, given that the perpetrator's identity was not in issue in this case.  In any event, the

Constitution allows a defendant to plead guilty while maintaining his innocence. Under the "*Alford* doctrine," the trial court is permitted to accept a guilty plea from a defendant who maintains his innocence where it "finds that there is a strong factual basis to support the crime charged, the plea of guilty is the result of an intelligent conclusion that the defendant's interests require entry of the guilty plea, and there is a benefit conferred on the defendant by virtue of the plea." *Oppel v. Meachum*, 851 F.2d 34, 35 n.2 (citing *Alford*, 400 U.S. at 38). Here, Petitioner "did not maintain his innocence, but admitted his guilt under oath" and therefore "to the extent [he] challenges his guilty plea on the basis of actual innocence, that claim must . . . fail." *Dickson-Eason v. Smith*, No. 9:19-CV-00455-JKS, 2020 WL 3893005, at *7 (N.D.N.Y. July 10, 2020). This claim is dismissed.

### 3. Ineffective Assistance of Counsel (Ground Three, Dkt. 1 at 8, 16-24; Dkt. 8 at 1-2; Dkt. 10 at 2-3; Dkt. 14 at 1)

#### a. Legal Standard

The two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), governs Sixth Amendment claims alleging ineffective assistance of counsel. A defendant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Id.* at 694. Prejudice in this context means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

*Strickland*'s two-part test applies to guilty plea challenges based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58-59. In order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, "but for"

his attorney's professionally unreasonable representation, "he would not have pleaded guilty and would have insisted on going to trial." *Id.* Furthermore, as a general rule, a defendant's "guilty plea effectively waive[s] all ineffective assistance claims relating to events prior to the guilty plea" that do not concern the voluntariness of the plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996). "He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards." *Id.* (alteration in original) (quoting *Tollett*, 411 U.S. at 267).

### b.    Counsel's Alleged Errors

Petitioner asserts that defense counsel ignored his request for substitute counsel. (Dkt. 1 at 8; *see also* Dkt. 8 at 1). This claim is belied by the record. When Petitioner requested new counsel at arraignment, defense counsel said he would meet with Petitioner in a few days to provide him with discovery materials and to discuss his concerns. (08/17/20 T: 8). At none of his subsequent court appearances did Petitioner again raise any concerns about Miller's representation or requested substitute counsel. Furthermore, the claim is unrelated to defense counsel's advice about whether to plead guilty or the voluntariness of his plea. Thus, it is barred by *Tollett*.

Petitioner faults defense counsel for failing to "raise" his mental health and substance abuse issues and complains that he "only" requested that the trial court order a competency examination pursuant to C.P.L. Article 730. (Dkt. 1 at 8). As noted above, the trial court granted the request for a competency hearing after defense counsel conveyed Petitioner's reports of hallucinations and nightmares. Petitioner did not mention any other

mental health or substance abuse issues to defense counsel that he wanted to be brought to the trial court's attention. Had he done so, they presumably would have been addressed during the psychiatrists' examinations. This claim is meritless and does not provide a basis for habeas relief.

Petitioner asserts that defense counsel "did not attempt to better the plea bargain proposed by the prosecution." (Dkt. 1 at 8). This is flatly contradicted by the record. The prosecution's initial offer to Petitioner included a 15-year sentence, and Petitioner rejected it. (11/23/20 T: 3). Defense counsel later convinced the prosecutor to reduce the sentence to 10 years, "where [the prosecutor] d[id]n't want to be." (04/05/21 T: 5). This claim is factually baseless and does not warrant habeas relief.

Petitioner contends that defense counsel "never advised [him]" of his "right to a hearing during [the] crucial stage of sentencing." (Dkt. 1 at 8). Petitioner does not identify what type of hearing he believes defense counsel should have requested at sentencing, what the hearing would have accomplished, or how it would have altered his sentence. This allegation is too vague to state a colorable ineffective assistance claim and is dismissed.

Petitioner asserts that defense counsel "never made or mentioned" a "post allocution [motion to withdraw]." (Dkt. 1 at 8). Although Petitioner asserted in his 440.10/440.20 motion that he asked defense counsel to file a post-allocution motion but defense counsel failed to do so (SR: 270), Petitioner now implies that they did not discuss the issue at all (Dkt. 1 at 21 (stating that counsel did not tell him that he had to make post-allocution motions)). In any event, defense counsel's failure to make or discuss a post-allocution motion with Petitioner does not amount to ineffective assistance. As discussed at length

above, Petitioner's attacks on the knowing, voluntary, and intelligent nature of his guilty plea are uniformly without merit. Since defense counsel did not have any colorable grounds on which to move to withdraw the plea, he did not act unreasonably in declining to make such a motion. Nor was Petitioner prejudiced by defense counsel's failure to make a motion that had no chance of success. This claim lacks merit and is dismissed.

Petitioner claims that defense counsel was ineffective for failing to argue that no blood, DNA, or fingerprints were found on the knife; and failing to object to the two-month delay in DNA testing. (Dkt. 1 at 16). Relatedly, Petitioner asserts that defense counsel should have argued that the absence of DNA evidence on the knife proved Petitioner's actual innocence. (*Id.* at 20). As discussed above in connection with Petitioner's involuntary plea claim, the lack of DNA on the knife was not particularly probative of anything, let alone Petitioner's actual innocence. Notably, Petitioner does not assert that he would not have pleaded guilty had he known that his DNA was not on the knife. Moreover, Petitioner has not explained the relevance of the fact that the knife was not DNA-tested until two months after the incident. This claim is based on pure speculation and conjecture and is dismissed.

Petitioner contends that defense counsel should have asserted that Petitioner's uncle's and the victim's grand jury testimony contained inconsistencies about, *inter alia*, where the knife was found and whether the victim gave Petitioner permission to hold onto his phone. (Dkt. 1 at 16, 18, 20). Petitioner asserts that defense counsel erroneously did not argue that the victim's statements about how the stabbing occurred were inconsistent. (*Id.* at 17). Defense counsel filed a motion to dismiss the indictment on the ground that the

evidence was insufficient to support the charges, but the court, upon review of the grand transcripts, denied this motion. (SR: 234, 245). In any event, this allegation does not relate to defense counsel's advice concerning whether to plead guilty or the voluntariness of Petitioner's plea. Accordingly, it is barred under *Tollett*.

Petitioner faults defense counsel for failing to preserve Petitioner's right to a so-called "felony hearing." (Dkt. 1 at 16). As the trial court observed in its order denying the 440.10/440.20 motion, it is unclear what exactly Petitioner is referring to. Respondent notes that if Petitioner is claiming he was entitled to a probable cause hearing pursuant to C.P.L. § 180.60 after he was arrested, he is mistaken. (Dkt. 29 at 43-44). A probable cause hearing is required only when the defendant is arrested on a felony complaint; once a defendant is indicted, it has no relevance. Because Petitioner already had been indicted, defense counsel did not have a colorable basis for requesting a probable cause hearing. Defense counsel was not objectively unreasonable for declining to make a motion that had no chance of success, and Petitioner was not prejudiced as a result. Moreover, because this allegation does not relate to defense counsel's advice concerning whether to plead guilty or the voluntariness of Petitioner's plea, it is barred under *Tollett*.

Petitioner contends that defense counsel failed to assert that the victim was Petitioner's friend and that Petitioner apologized to him. (Dkt. 1 at 17, 20). This allegation does not relate to defense counsel's advice concerning whether to plead guilty or the voluntariness of Petitioner's plea. It also is barred under *Tollett*.

Petitioner contends that defense counsel should have asserted his name is not mentioned in an unspecified video. (Dkt. 1 at 17). This allegation is too vague and

speculative to state a colorable claim for habeas relief.  Moreover, since it does not relate to counsel's advice about whether to plead guilty or the voluntariness of Petitioner's plea, it is barred under *Tollett*.

Petitioner claims that defense counsel should have argued that the Facebook Messenger messages were inadmissible.  (Dkt. 1 at 17).  Relatedly, Petitioner claims that defense counsel should have requested suppression hearings with regard to the knife and Facebook Messenger messages from the victim's phone.  (*Id.* at 20-21, 25).  As Respondent argues, a motion to suppress would have been denied.  (Dkt. 29 at 43).  The knife was recovered from bushes near the crime scene, not from Petitioner.  (*Id.* (citing SR: 219)).

Furthermore, Petitioner has identified no basis for suppressing the Facebook Messenger messages on the victim's phone.  (*Id.*).  On a motion to suppress evidence under the Fourth Amendment, the defendant must show he had a legitimate expectation of privacy in the item seized.  *Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980).  Petitioner has not explained how he would have established that he had a "subjective expectation of privacy," *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014), in a phone that did not belong to him and instead belonged to the person he admitted stabbing.

Petitioner asserts that defense counsel should have informed the trial court that he did not take the victim's phone but rather the victim allowed him to borrow it to make a phone call.  (Dkt. 1 at 17, 22).  As noted elsewhere, defense counsel filed a motion to dismiss the indictment on the ground that the evidence was insufficient to support the charges, but the court, upon review of the grand jury transcripts, denied this motion.  (SR: 234, 245).  In any event, the robbery count was dismissed following Petitioner's guilty

plea. Petitioner thus cannot demonstrate how the outcome of his criminal proceeding would have been different but for counsel's omission.

Petitioner objects that defense counsel failed to raise the fact that he was not named in an unidentified video (Dkt. 1 at 17) and that there were inconsistencies in the grand jury testimony and statements of the victim and Petitioner's uncle (*id.* at 17-18, 20, 22). As Respondent notes, Petitioner has not specified what action defense counsel should have taken regarding the video or the grand jury testimony. (Dkt. 29 at 44). Presumably, defense counsel would have highlighted any inconsistencies in the witnesses' testimony and statements during his cross-examination of them at trial. However, Petitioner elected to plead guilty and waive his Sixth Amendment right of confrontation. These alleged omissions by defense counsel do not relate to his advice to Petitioner or the voluntariness of Petitioner's plea. Thus, in addition to being meritless, they are barred by *Tollett*.

Petitioner contends that defense counsel failed to assert that Petitioner was entitled to the defenses of justification and intoxication because he did not remember the stabbing and the victim was his friend. (Dkt. 1 at 19, 22). These allegations are contradicted by the record. Defense counsel expressly informed the trial court on April 8, 2021, that he had discussed both defenses "in detail" with Petitioner several times since the failed colloquy on April 5, 2021, and that Petitioner had no further questions about the applicability of the defenses to his case. (04/08/21 T: 3). The trial court also discussed the defenses with Petitioner during the April 8, 2021 colloquy, and Petitioner confirmed that he was waiving these defenses and wanted to plead guilty. (04/08/21 T: 12-14). This claim is plainly without merit and is dismissed.

- 55 -

Petitioner faults defense counsel for failing to inform the trial court that Petitioner accepted responsibility for his actions, did not intend to injure the victim, had been friends with the victim for two years, wrote letters of apology to the victim, and apologized in person to the victim before his conviction. (Dkt. 1 at 19). At least at the time of the plea, the trial court was aware that Petitioner accepted responsibility for his actions in light of his admission of guilt. In any event, these allegations of ineffectiveness do not relate to counsel's advice about whether to plead guilty or the voluntariness of Petitioner's plea. Accordingly, they are barred under *Tollett*.

Petitioner contends that defense counsel was ineffective because he failed to ensure Petitioner's right to be present physically at sentencing pursuant to C.P.L. § 380.40(1). (Dkt. 1 at 20). As noted above, Petitioner appeared virtually due to the restrictions imposed by the COVID-19 pandemic. At sentencing, Petitioner did not make a statement on his behalf, and he received the sentence he had bargained for. Petitioner has not explained how his virtual appearance at sentencing, rather than his physical presence, had any effect on the outcome of his proceeding. Therefore, he cannot show prejudice as a result of counsel's omission.

Petitioner contends that defense counsel should have objected to the trial court's statements concerning Petitioner's sentencing exposure and setting a trial date as unduly coercive. According to Petitioner, the trial court's statements nullified his plea. (Dkt. 1 at 21, 22, 23). The Court already has determined that the trial court's statements did not amount to improper coercion. Therefore, defense counsel's failure to object was not objectively unreasonable and did not prejudice Petitioner.

- 56 -

Petitioner asserts the defense counsel should have corrected the trial court when it stated that the lowest sentence Petitioner could receive was 10 years when, in fact, the statutory minimum for first-degree assault was 8 years. (Dkt. 1 at 23). Petitioner is correct about the 8-year statutory minimum, but the trial court repeatedly stated it would not accept a plea offer that entailed a sentence shorter than 10 years. Thus, had defense counsel objected, it would have had no effect on the sentence the trial court ultimately imposed.

Petitioner faults defense counsel for failing to object when the prosecutor omitted certain transcripts from the appendix on appeal. (Dkt. 1 at 24). Petitioner does not explain the basis on which defense counsel should have objected or how this alleged omission affected the outcome of his appeal. This claim is too vague to state a colorable ineffective assistance claim and is dismissed.

Petitioner contends that defense counsel should have moved to dismiss the robbery count because Petitioner denied stealing the victim's cell phone and the victim did not testify that Petitioner forcibly stole his phone. (Dkt. 1 at 24; *see also* Dkt. 10 at 2-3). As noted above, defense counsel did move to dismiss the indictment based on insufficiency of the grand jury testimony, and the trial court denied the motion. (SR: 234, 245). Moreover, the robbery count was dismissed as part of the guilty plea. This claim is meritless and is dismissed.

Petitioner claims that defense counsel should have moved to have the first-degree assault charge reduced to second-degree assault because Petitioner was friends with the victim, did not intend to cause serious physical injury, and apologized to the victim in person. (Dkt. 1 at 24; *see also* Dkt. 10 at 2-3). As noted above, defense counsel did move

to dismiss the indictment based on legal insufficiency of the evidence. That Petitioner had been friends with the victim prior to the incident and may have apologized to him were not defenses to any of the charges and did not supply colorable grounds for dismissal or reduction of charges in the indictment. Defense counsel did not perform in an objectively unreasonable manner or prejudice Petitioner's case by declining to make motions that had no chance of success.

Petitioner asserts, without any factual support, that defense counsel had represented him in an earlier matter and that they purportedly had "a conflict of interest & irreconcilable conflict because [they] did not agree about anything." (Dkt. 8 at 1, ¶ 3). However, Petitioner does not claim that he and defense counsel had a conflict of interest during the criminal proceeding at issue in this petition. Moreover, a defendant cannot create an actionable conflict of interest "simply by expressing dissatisfaction with his attorney's performance." *United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999). Petitioner's claim is factually and legally baseless and does not warrant habeas relief.

Petitioner faults defense counsel for failing to inform the trial court that Petitioner was a first-time violent felony offender. (Dkt. 8 at 2, ¶ 4; *see also* Dkt. 10 at 2-3). As Respondent notes, the trial court certainly would have been aware of that information based on the presentence investigation report, which was required to include Petitioner's prior criminal record. (Dkt 29 at 46 (citing C.P.L. § 390.30(1) ("The pre-sentence investigation consists of the gathering of information with respect to the circumstances attending the commission of the offense, the defendant's history of delinquency or criminality, and the defendant's social history, employment history, family situation, economic status,

education, and personal habits.")).    Therefore, Petitioner cannot show that defense counsel's omission resulted in any prejudice.

Petitioner contends that defense counsel failed to raise mitigating factors, including that Petitioner wrote letters of apology and apologized in person to the victim, who was his friend.  (Dkt. 8 at 2, ¶ 5).  Respondent notes that although the presentence investigation report is not in the record, the trial court expressly noted at sentencing that it had reviewed the report.    According to Petitioner, the presentence investigation report included information about his mental health and substance abuse issues, along with the fact that he had apologized to the victim, who was his friend.  (Dkt. 29 at 46 (citing Dkt. 1 at 7, 8, 20; Dkt. 8 at 2; SR: 44)).  Further, the negotiated plea agreement called for a specific sentence of 10 years' imprisonment.  During the plea hearing, the trial court stated that it would adhere to the parties' agreement and impose a 10-year sentence.  (04/08/21 T: 11).

Petitioner has offered no reason to believe that defense counsel could have changed the length of the sentence by raising these alleged mitigating factor during sentencing.  As Respondent argues, "a reduced sentence would likely have undone the plea," since the prosecution has the "right to withdraw consent to [a] plea" and move for its vacatur "[w]here the record shows that the prosecutor's consent to [the] plea [wa]s premised on a negotiated sentence and a lesser sentence [wa]s later deemed more appropriate."  (Dkt. 29 at 46 (alterations in original) (quoting *People v. Farrar*, 437 N.Y.S.2d 961, 963 (1981)). Petitioner has not demonstrated that defense counsel performed unreasonably or prejudiced the defense.

Petitioner contends that defense counsel erroneously failed to inform the prosecutor or the trial court that the knife police recovered following the incident did not have blood, Petitioner's DNA, or Petitioner's fingerprints on it. (Dkt. 1 at 16). This assertion makes no sense; the prosecutor would have disclosed this information to the defense, not the other way around. The forensic testing results on the knife were not particularly important since the perpetrator's identity was not in doubt. Moreover, Petitioner has not explained the relevance of the alleged two-month delay between the discovery of the knife and the forensic testing. Therefore, he has not established that defense counsel acted unreasonably in failing to object to it or that Petitioner was prejudiced. (*Id.*).

Petitioner contends that defense counsel was ineffective for failing to advise him of his rights to testify at the grand jury and at trial. (Dkt. 14 at 1). As for the alleged failure to inform Petitioner of his right to testify before the grand jury, this claim does not relate to counsel's advice about whether to plead guilty or the voluntariness of Petitioner's plea. Accordingly, it is barred under *Tollett*. As for the alleged failure to advise Petitioner of his right to testify at trial, Petitioner cannot demonstrate he was prejudiced. During the plea colloquy, he was informed by the trial court that the right to testify was one of the rights he was waiving by pleading guilty, and Petitioner confirmed he wished to waive that right. These claims are plainly meritless and are dismissed.

### 4.    Sentencing Claims (Ground Four, Dkt. 1 at 10; Dkt. 10 at 1)

Petitioner contends that his virtual appearance at sentencing violated his right under C.P.L. § 380.40(1), which provides that "[t]he defendant must be personally present at the time sentence is pronounced." (*See* Dkt. 1 at 20). This Court, sitting in habeas review,

may only entertain claims that a state prisoner "is in custody in violation of the Constitution or treaties of the United States." 28 U.S.C. § 2254(a). It is well settled that "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). The alleged violation of C.P.L. § 380.40(1) does not present a cognizable federal claim and is dismissed. *See Tucker v. Yelich*, No. 16-CV-4931 (JFB), 2017 WL 3669613, at *10 (E.D.N.Y. Aug. 24, 2017) (holding that state prisoner's claim that his right to be present under C.P.L. § 380.40(1)was "not cognizable in the instant action" brought pursuant to 28 U.S.C. § 2254).

Petitioner asserts that the 10-year sentence imposed pursuant to the negotiated plea was "harsh and excessive" for numerous reasons. (Dkt. 1 at 10). An alleged abuse of discretion by a sentencing judge does not present a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (holding that the petitioner did not raise a cognizable federal claim by seeking to prove that the state judge abused his sentencing discretion in disregarding his psychiatric reports).

Pursuant to P.L. § 70.06(1)(a), the legal sentence for a second felony offender convicted of a violent felony as defined in P.L. § 70.02, such as first-degree assault, a class B violent felony offense, is a determinate prison sentence having a minimum of 8 years and a maximum of 25 years. Petitioner's negotiated sentence of 10 years was less than half the statutory maximum term of 25 years he could have received had he been convicted of first-degree assault after trial. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381,

1383 (2d Cir. 1992). Accordingly, Petitioner's harsh and excessive sentencing claim is dismissed as not cognizable on federal habeas review.

Petitioner also contends that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments. (Dkt. 10 at 1). He reasserts the same or similar factors cited in support of his state-law harsh and excessive sentencing claim—his plea was coerced, he had informed the court prior to his plea that he had not intended to cause serious physical injury, he had been drinking at the time of the crime, the victim was his friend, he had apologized to the victim, and this crime was his first violent felony. (*Id.* at 2-3).

"The Supreme Court has articulated a principle of 'gross disproportionality' for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against cruel and unusual punishment." *Baldwin v. Wolcott*, No. 6:20-CV-06989 EAW, 2024 WL 1052679, at *11 (W.D.N.Y. Mar. 11, 2024) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (collecting cases)). "[I]n noncapital cases, the Eighth Amendment does not require consideration of mitigating circumstances." *Id.* at *12 (citing *Harmelin*, 501 U.S. at 995). This principle disposes of Petitioner's Eighth Amendment claim, which is solely based on the trial court's failure to account for various mitigating factors in his case. In any event, Petitioner's sentence, which was only two years above the statutory minimum, was not "grossly disproportionate" to his crime, which involved serious physical injuries to the victim. Petitioner's Eighth Amendment claim is meritless and is dismissed.

### 5.    Other Claims

#### a.    Fifth Amendment

Petitioner contends that he that he "did not self-incriminate" himself in violation of the Fifth Amendment because, contrary to the victim's grand jury testimony, he did not send messages to the victim on Facebook Messenger. (Dkt. 10 at 2-3). According to Petitioner, he did not have a cell phone, he did not know his Facebook password, and he did not have internet access at the jail. (*Id.*). This claim does not relate to Petitioner's decision to plead guilty or to the voluntariness of his guilty plea. Accordingly, it is barred by *Tollett*.

#### b.    Grand Jury Errors

Petitioner contends that his uncle fabricated his grand jury testimony that he witnessed the stabbing. (Dkt. 12 at 1). According to Petitioner, he went inside his uncle's house to tell him about the stabbing, and when they both returned outside, the victim was gone. (*Id.*).

The Second Circuit has held that errors in a state grand jury proceeding are not cognizable on federal habeas review because the petit jury's guilty verdict renders any charging decision harmless beyond a reasonable doubt. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986), and rejecting, as not cognizable on habeas review, claims based on insufficiency of the evidence to support the indictment and the prosecutor's failure to present exculpatory evidence to the grand jury). "Courts in this Circuit have held that *Lopez*'s reasoning applies equally to a conviction based on a plea of guilty and accordingly have held that a defendant's guilty

plea cured any possible deficiency in the grand jury proceeding." *Sullivan v. Goord*, No. 05-CV-6060L, 2007 WL 2746900, at *8 (W.D.N.Y. Sept. 19, 2007) (collecting cases). As discussed above, Petitioner entered a knowing, intelligent, and voluntary guilty plea in which he admitted his factual guilt. Accordingly, his challenges to the grand jury proceeding have been waived and are dismissed.

### c.    Substantive Due Process

Petitioner asserts that his conviction and incarceration violate substantive due process in violation of the Fourteenth Amendment because the victim's and Petitioner's uncle's statements and grand jury testimony "invol[v]ed deliberate indifference/inconsist[enc]ies at the least and malicious disregard for wellbeing of [Petitioner's] incarceration in pursuit of profit at worst because of ineffective assistance of counsel, invalid plea, . . . and excessive & harsh sentencing." (Dkt. 13 at 1).

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). "Under this rule, substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources." *Roman v. Velleca*, No. 3:11CV1867 VLB, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) (citing *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)). Such is the case here. The allegations in support of the substantive due process claim are duplicative of those forming the grounds for Petitioner's other claims challenging the fairness of the grand jury, the

voluntariness of his plea, the effectiveness of counsel's representation, and the length of his sentence. The Court already has dismissed these claims, and Petitioner's substantive due process claim likewise must fail.

### d.    Actual Innocence

Petitioner argues that the absence of DNA evidence, fingerprints, and blood on the knife, along with a sweatshirt and a bloody t-shirt found in the vicinity of the crime, proves his innocence. (Dkt. 16 at 1). The Court interprets these allegations as attempting to assert a freestanding claim of actual innocence.

"To this day, '[w]hether . . . a federal right [based on a claim of actual innocence] exists is an open question.'" *Jimenez v. Stanford*, 96 F.4th 164, 183 (2d Cir. 2024) (ellipsis and alterations in original) (quoting *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009)). However, "[a]ssuming for the sake of argument that a freestanding actual innocence claim is cognizable in a 28 U.S.C. § 2254 proceeding brought by a non-capital prisoner, the Supreme Court has suggested that the required showing would be even higher than the demanding standard in *Schlup v. Delo*, 513 U.S. 298 (1995), applicable to gateway actual innocence claims." *Miller v. Fennessey*, No. 1:20-CV-00354 EAW, 2024 WL 2214808, at *18 (W.D.N.Y. May 16, 2024) (citing *House v. Bell*, 547 U.S. 518, 555 (2006)).

Under *Schlup*, the evidence of actual innocence must be both "credible" and "compelling." *Schlup*, 513 U.S. at 324. To be "credible," the evidence must consist of "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* To

be "compelling," the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

The absence of DNA evidence, fingerprints, and blood on the knife, along with the sweatshirt and bloody t-shirt, arguably are not "new" since they were available prior to Petitioner's guilty plea. Moreover, the presence of a sweatshirt and a bloody t-shirt establish nothing about who committed the crime or how it was committed. Likewise, the absence of any DNA evidence, blood, or fingerprints on a knife discarded under a bush in the vicinity of the crime scene do not definitively exclude Petitioner as the perpetrator. Petitioner's actual innocence claim is wholly speculative and does not come close to meeting the standard for a gateway claim, much less the necessarily more rigorous standard for a hypothetical freestanding claim of actual innocence. Accordingly, it is dismissed.

IV.    **CONCLUSION**

For the reasons above, the motion to stay (Dkt. 32, 40) is denied with prejudice. The petition (Dkt. 1) is deemed amended to include the allegations in Dockets 8, 10, 12, 13, 14, 16.  As so amended, the petition is denied on the merits pursuant to 28 U.S.C. § 2254(b)(2).  The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(1) because Petitioner has failed to make "a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        September 2, 2025
              Rochester, New York